The next case for oral argument is case number 14-6007, N. Ray Cindy Foster, John A. Larson III v. Cindy Foster et al. Morning, Your Honor. Leonard Coleman for the appellate. Go ahead, Mr. Coleman. Please, the court. The appellant is John Larson who purchased an insurance agency from the debtor. The debtor at the time owed money to another party from whom she purchased an insurance agency. And at the time of our acquisition, there were representations, there were no claims pending, and the debtor would not compete. My client agreed to pay $430,000. Within three weeks after we signed the contract, or my client signed the contract, the debtor was in fact sued because there was a claim pending by Mr. Stevens, who ultimately obtained a judgment against her for well over $100,000 on his claim. In the meantime, my client had been making payments on his contract and got them down to about $170,000, by which time he discovered she had, in fact, been competing against him all the time and was taking business from him. None of these facts are really in the record, are they? These are all your allegations. Well, these are the allegations in the petition to set aside the fraudulent conveyance. Well, I understand, but they're all allegations, not facts. Yes, these are all the allegations. That's correct, Your Honor. So, we really need to hear the facts, what's in the record, not what you think happened. What is not an allegation is that the debtor who has admitted this in these pleadings, the debtor in fact assigned the contract against my client, assigned that to a third party, Mr. Stevens, who had the judgment against her. The assignment, which has been admitted here, stated no consideration. She was not released from the judgment. And then she filed her chapter seven in the bankruptcy- And then what do you base that on, that she was not released from the judgment or that the assignment was not considered? Because the assignment did not mention the judgment. And when she filed her chapter seven, she listed Mr. Stevens as a creditor to the full amount of the judgment and indicated the basis of his claim was the judgment. So she, by her chapter seven, indicates she still owes the judgment. She filed her bankruptcy within a year, perhaps- Well, let's go back to that for a second. Wasn't there some agreement that there would, dollar for dollar collection by Mr. Stevens would apply against the judgment? And that's an allegation. That's not a fact. That's not a fact. That's what Mr. Stevens has alleged in his defense. But there's been, but he admits- But that's not a fact. Not a fact. Got it. It's not in the assignment itself. No, nothing in the assignment at all. So within the year, she files her bankruptcy, perhaps nine months later. I believe, clearly, this assignment was a fraudulent conveyance. In her statement of affairs in bankruptcy, in her chapter seven, she did not indicate that, in fact, she had assigned this contract within one year prior to a bankruptcy. And consequently, of course, did not indicate whether she received anything in exchange. So, whether intentionally, unintentionally, negligently, this assignment was concealed from the bankruptcy coordinate from the trustee. In the meantime, Mr. Stevens sues my client on this contract that was assigned. My client was not listed in the bankruptcy. Now, keep in mind, our allegation is that she competed against us, took business from us. We have a claim against her on the same contract. My client finds out about the bankruptcy indirectly. We file a claim in the bankruptcy based on his allegations and get permission to file the claim late because he was not listed. And at that point, I alert the trustee in the bankruptcy that it appears there's a fraudulent conveyance, time is running out, what do you want to do? I get a response from the bankruptcy trustee, there's not enough time to determine. And so I, on behalf of the creditor, file a suit, petition to avoid a fraudulent conveyance. Do that in February of last year. Petition is filed under electronic filing, a copy goes to the trustee, he's aware the suit was filed. Answer is filed, copy the answer goes to the trustee. And we continue from that point through late August to litigate the case. Discovery back and forth, motions to do this, motions to do that. There's a variety of activity in this case over the next eight months. The trustee is- Just out of curiosity, why was the debtor named as a defendant? I'm sorry. Why was the defendant named as a, why was the debtor, thank you, why was the debtor named as a defendant? Well, the debtor was part of the fraudulent conveyance. But why was she a defendant? I believe she was a necessary party and added her. Why? What relief were you seeking against her? Well, I was seeking relief in the bankruptcy to set aside the fraudulent conveyance that she participated in. So therefore, I thought I had to join both Stevens, both the party receiving the transfer. May have been a moot point, but I added her just to make sure. While we're talking about litigation, did I hear you say that Stevens did file suit against Larson? Yes. And so why didn't you just raise all of this in that action? Well, I did. Well, at that time, I'm not too sure I could raise that in that action, Your Honor. Why not? Well, she had filed a bankruptcy. He technically owned that claim against us. Right, so he stepped into her shoes. Why couldn't you have raised all of this? Well, we have alleged in that suit- You keep interrupting me. I'm sorry. Let me finish my question. Couldn't you have defended and said that you believe that she breached the contract, so there's nothing owing? Yeah, and we have done that. All right, but did you do that in the case that Stevens filed against your client? Yes, we filed it. Our answer in that case indicates we don't owe anything, and in fact, there's a set off and a counterclaim. And why, what's the status of that case? That's on hold. Why? Because of the state. Why? The court has set that aside pending a decision in this court whether Mr. Stevens owns the asset. But Mr. Stevens isn't in bankruptcy. You're not in bankruptcy. Why can't that case go forward? How does this stay applied? Well, my position in that case is that he doesn't own the asset. It's owned by the bankruptcy. So therefore, it's the trustee who would be pursuing the claim, not him. So he has no standing there. Right, but you don't have that. I mean, why not just settle this in state court? I guess I'm just not understanding why we're going through all the fraudulent transfer when he's got the right to collect. I mean, forget the fraudulent transfer. He's got the right to collect. You're disputing that you owe anything. Why not just settle it there? Because what I'm disputing is his right to even file the suit. That it's a fraudulent conveyance and he does not own that asset and he doesn't have the right to pursue it because it's an asset in bankruptcy. One of the intriguing aspects of this case is that, and I think there is plenty of evidence as to what happened on the record as far as the transfer, whether it's fraudulent, whether it should be set aside. The same day we were set for trial on the fraudulent conveyance action, the debtor, Mr. Stevens filed a motion to dismiss on the basis that my client lacks standing because this is an action that should be owned by the trustee. And that's primarily, that's the first reason why we're here. I responded by a motion for retroactive approval to stand in the place of the trustee. The issue became whether the trustee consented to the creditor pursuing it, or whether the trustee abandoned the claim and I had no right to pursue it. And why didn't you make that your motion sooner? I'm sorry, your honor. Why didn't you make your motion sooner? Instead of waiting until the evaluation. Frankly, I neglected that. Didn't notice. We were in communication with the trustee. The trustee sat on the sidelines, so it appeared obvious I had the right to pursue the claim. The issue was not raised at all. I think that motion was filed two hours before trial. So we were proceeding along as if I had the consent, the debtor and Mr. Stevens, a third party, didn't raise the issue, nothing back and forth that says, wait, you don't have the right to pursue it. Only when the issue was raised that I- But the Eighth Circuit's law is pretty clear, you need court approval to- Yes, needed court approval. But you did not see- I had not done it until that point. At that point, the court denied my motion for retroactive approval on the basis that the trustee owned the claim and I did not own the claim. And my point to the court here and then was that the trustee consented by his inaction to my pursuing the claim. That lead, let's assume- Well, even if the trustee consented, you need the court approval. You don't need just the trustee's approval, you need the court's approval. That's correct. And what was the trustee supposed to respond to if there was no motion? You made this motion to retroactively apply. Are you saying he consented when he had no obligation to participate in the suit? By, I may interrupt, excuse me, Your Honor. By sitting on the sideline and monitoring the case and not intervening, yes, the trustee consented as a matter of law. He consented by that inaction. Is there some case law that supports that? I believe that's in my brief, Your Honor. I can't give you that case off the top of my head, but it's in the brief. The interesting aspect is, okay, so the fraudulent conveyance is set aside. Now what? And I'm sure my opponent will argue this. Well, I am 90% of the creditors in the same Chapter 7 case. My client's claim represents 90%. The debtor's brief basically says, well, you're not a creditor because I didn't list you. I don't think that's the testimony. So the interesting thing is, okay, what happens now? Do I, by pursuing this claim, the claim is really against me, and I'm the one who set it aside and brought it into the bankruptcy court. What happens now? And I think that's premature. The debtor's going to argue, well, it's a moot point because the asset isn't worth anything. We don't know that yet. That's up to the trustee to determine. Once it's set aside, then the trustee can A, pursue the claim, determine whether or not it's efficient to pursue the claim. Negotiate a deal by which my client subordinates his claim, pays money in, and all the other creditors get 100 cents on the dollar. We're not there yet. Are you suggesting the trustee can't make that evaluation now? He can't because the trustee has not participated in this litigation so far. I think as a practical matter, has had no knowledge of what's going on and hasn't made that. But you just said he was monitoring the case. He was. He got all the pleadings and saw that there was a variety of activity in the case, but didn't participate in discovery, had no conversations, and no communication. So your position here is that the claim against your client has merit. Yes. Well, that's the intriguing thing. It has merit on the face of it. And then- Well, but it has merit. It's worth pursuing. It's worth pursuing for the best interest of the creditors. And I think that's what we're here arguing about. And it may be a determination. Well, it's worthless. So you're not really representing your client's best interest at this point. You're really worried about the creditor body. And that's the intriguing aspect, because I am. Because I've got the ability, once it gets back into the, as an asset, I've got the ability to fight the claim or negotiate a deal with the trustee to say, okay, we'll subordinate our claim. We're going to pay less than what is alleged to be owed, and the other creditors get 100 cents on the dollar. Why didn't you just offer that to the trustee instead of going through all of this? I did. We didn't get this far without talking to the trustee and having a face to face meeting and attempting to negotiate something. Didn't work out. That's my presentation, Your Honor. Okay, thank you. Thank you. But before you sit down, did you perhaps want to apologize to us for being late? I do apologize. There were three accidents on Highway 40. I'm really sorry, Your Honor. I've expected fully to be here. It was just nice to hear an explanation. I am sorry. My apologies. Okay, thank you. Steve Barber on behalf of Bruce Stevens. I would also like to apologize for being late for the same reasons. There was accidents on Highway 40 as I was coming in, so. You guys didn't carpool together? No. Your Honor, as I said, my name's Steve Barber. I'm here on behalf of Bruce Stevens. And just very quickly, the bankruptcy court did not abuse its discretion in finding or holding that there was no standing on behalf of Larson to pursue this adversary complaint. The bankruptcy judge further held that the trustee was justified in not pursuing the fraudulent transfer. And more importantly in my view, I think if Mr. Larson was granted the relief that he sought, that the claim was added back to the bankruptcy estate and that he was given derivative authority to pursue it, he essentially would be pursuing a claim against himself. And I think that the bankruptcy court was correct. I don't think anybody has asked for him to have derivative standing to pursue the claim against your client. No one's asked to do that. Well, it's my understanding that he was seeking to get the transfer set aside and he can pursue the claim. Well, I don't know that the last thing follows. I'm sorry? I don't know why the last thing follows. He's trying to bring the claim back into the estate, but then it's the trustee's claim. So far, at least, he's not asked for permission to pursue the claim against his client. That would still be the trustee's claim. Be that as it may, there are certain necessary steps that he needed to take to set aside the transfer as a derivative party, and they failed to do so, as he admitted in this oral argument, that they never requested the trustee to pursue it. The trustee kind of sat on the sidelines. I would submit that even though the trustee did not formally oppose their claim, it's not tacit consent or authority to proceed derivatively. You need the bankruptcy court's authority to do so, and that was never requested or granted. And furthermore, Larson never named the trustee or the bankruptcy estate as the real party in interest, which was noted by the trustee in his own response. He simply, under the elements set forth in racing services by the Eighth Circuit, none of the elements to allow a party to pursue a derivative avoidance action were met here. Larson never petitioned the trustee to bring the claim or had the trustee refuse to do so. Never sought permission from the bankruptcy court to initiate the claim. And the trustee did not unjustifiably refuse to pursue the claim. As far as any kind of tacit consent or equitable estoppel, I would note that there is no law that allows for derivative standing pursuant to equitable estoppel. There is a case cited in the appellant's brief, but it's a New York State case dealing with foreclosure on a mortgage. Has nothing to do with bankruptcy. I personally could not find any bankruptcy cases dealing with this issue and providing for authority. I think the elements of allowing for derivative actions are fairly strict. Primarily because I think the statute 11 USC 548A1 expressly says that it's the trustee is the one that pursues such avoidance claims. And to allow another party to pursue it, there are certain elements that must be met. And they were not in this particular matter. So I would submit that Larson failed to obtain a derivative standing and the bankruptcy court was correct in so holding. I would note that the issue of standing is something that can be raised at any time. It's a component of subject matter jurisdiction, cannot be waived. And therefore, the fact that it was raised at the 11th hour, which I concede does seem odd. But it was raised and it was brought to the bankruptcy court's attention. And it's my position that she properly found in her order that standing can be raised at any time and there was no such standing here. I would ask the panel to affirm the bankruptcy court's order and hold that Mr. Larson did not have derivative standing to bring this avoidance action. If there's no questions, I will rest my argument. Thank you. A couple minutes for rebuttal. Did you want? Two minutes and 45 seconds. Your Honor, you'd ask for authority for the proposition that the trustee consents by his inaction. And I found that in my brief, that's the Henry Racing Services case 540 Fed 3rd 892. Which specifically held that a creditor was deemed to have obtained the trustee's consent in cases where the trustee does not formally oppose a creditor's suit. And in my affidavit in support of my motion to for retroactive authority, I indicated under oath that in paragraph three, I advised the trustee in the case that I discovered evidence to support the conclusion that debtor had transferred an asset of more than nominal value without adequate consideration. I asked the trustee if he would be pursuing any action and he responded only that he would want additional information. To avoid the entry of a discharge which would have terminated the right to pursue the fraudulent conveyance, I filed the instant complaint. And thereafter, continued to advise the trustee and send him, he got copies of all the pleadings and what was going on. But he did formally object before the court approved. He formally objected finally when the motion for it to dismiss was filed. That's when it hit the fan and all the issues were raised a couple hours before trial, yes. Was the trustee a party to the suit at that time? The trustee had not been a party to the suit at that time. So how did his objection come up? The trustee had been receiving and then received a copy of the motion to dismiss and responded to the motion to dismiss. That's why he never really intervened in the case. He filed a response. He responded to your motion. Yes. You did make a motion to get your derivative stand and he responded to that and objected. Correct. He responded to my motion for retroactive approval. Thank you, your honor. Thank you. The court will be in recess until further notice.